IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:20-cv-00460-MR

ADRIAN DOMINIC WATKINS, )
)
          Plaintiff, )
)
vs. )
)
FNU BLACKMON, et al., ) **ORDER**
)
          Defendants. )
_____ )

**THIS MATTER** is before the Court on initial review of the Complaint. [Doc. 1]. The Plaintiff is proceeding *in forma pauperis*. [Doc. 6].

The *pro se* Plaintiff, who is presently incarcerated at the Scotland Correctional Institution ("Scotland C.I."), filed the Complaint pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Lanesboro Correctional Institution ("Lanesboro C.I."). [Doc. 1]. He names as Defendants: FNU Blackmon, an operations/SRG officer at Lanesboro C.I.; Kevin J. Ingram, a unit manager at Lanesboro C.I.; Albert K. Lambert, an assistant unit manage at Lanesboro C.I.; Kenneth E. Lassiter, the North Carolina director of prisons; FNU Mack, a custody sergeant at Lanesboro C.I.; T. Reynolds, an assistant superintendent at Lanesboro C.I.; FNU Richardson, the superintendent of Lanesboro C.I.; FNU Simmons, an

operations lieutenant at Lanesboro C.I.; and Marshall Williams, an assistant unit manager at Lanesboro C.I.

The following is a summary of the allegations stated in the Plaintiff's Complaint. On August 25, 2017, the Plaintiff was transferred to Lanesboro C.I., where he had been housed previously. When the Plaintiff arrived at the Lanesboro C.I. receiving area, Defendant Blackmon inspected, searched, and inventoried the Plaintiff's property. Defendant Blackmon said that he remembered the Plaintiff from the last time that he was at Lanesboro C.I. Defendant Blackmon then told the Plaintiff that he had too much property and that some of it would need to be sent home or destroyed. The Plaintiff told Defendant Blackmon that his property consisted mostly of legal property and schoolwork. [Doc. 1 at 3, 5].

Defendant Blackmon called over Defendant Simmons, who allegedly addressed the Plaintiff in a belligerent tone in an attempt to provoke him. Defendant Simmons said that he knew of the Plaintiff, that he was not going to put up with the same "shit" that they put up with the last time the Plaintiff was at Lanesboro C.I., and that the excess property would be sent home or destroyed. [Id. at 5]. The Plaintiff attempted to explain to Defendant Simmons that North Carolina Department of Public Safety ("NCDPS") policy permits prisoners to have relevant legal materials for active litigation.

2

Defendant Simmons told the Plaintiff that he was aware of the Plaintiff's "numerous bullshit legal actions" and that he was only going to allow the Plaintiff to have three bags of property. [Id. at 6]. The Plaintiff told Defendant Simmons that he was not trying to argue with him and wanted to speak to the Officer in Charge. [Id.].

The Plaintiff alleges that, during this conversation, Defendant Simmons told the Plaintiff to turn around and place his hands behind his back. The Plaintiff asked Defendants Simmons why as he was complying with Simmons' order but that Simmons pepper-sprayed him, contrary to NCDPS policy. Defendant Blackmon threw the Plaintiff face-down on the floor where the Plaintiff was pepper sprayed again and was beaten with a baton, which caused pain and bruising to his leg. The Plaintiff alleges that he was not offered a decontamination shower or medical treatment, contrary to NCDPS policy. [Id. at 7, 11].

The Plaintiff alleges that his head and neck were saturated with pepper spray. He was placed in full restraints and was left in an outside recreation cage on Anson Unit "so that the sun and hot temperature could further intensify the burning, blinding and suffocating effect of the pepper spray." [Id. at 8]. Defendants Blackmon and Simmons refused to inform Anson Unit staff of the Plaintiff's presence in the recreation cage in order to ensure that

3

he suffered without receiving assistance, decontamination, or medical treatment. The Plaintiff remained in the cage for "what seemed like an extensive period of time" before he was able to gain the attention of unit staff. [Id. at 10]. Defendant Lambert took the Plaintiff for a decontamination shower and medical attention. The Plaintiff was then placed in the "hole" for at least 72 hours due to the use of force incident.[1] [Id.].

The Plaintiff asked Defendant Mack about his property during his time in the hole. Defendant Mack said that the property had been searched and inventoried and was being stored until someone could go through it. The Plaintiff informed Defendant Mack that he has active litigation and that he needed his legal and school materials, mouth guard, medication, and religious property. However, Defendant Mack never gave the Plaintiff his property. [Id.].

The Plaintiff alleges that he was taken back to medical on August 27, 2017 for photographs of his leg injury and for treatment of his pain and bruising. The Plaintiff further alleges that, on August 28, 2017, he was placed on "Modified Housing" or "Close Observation Housing for Regular Population" without a hearing, contrary to NCDPS policy. The Plaintiff

---

[1] In the Grievance attached to the Complaint, the Plaintiff characterized this as a "cool off" period. [Doc. 1 at 27].

4

inquired about his property but he was told that it had not yet been searched and inventoried. [Id. at 11].

On August 31, 2017, the Plaintiff told Defendant Lambert that he was not supposed to be in modified housing and that he needed all his property and a DC-160 form. Defendant Lambert agreed that the Plaintiff should not be on modified housing but he kept the Plaintiff there anyway. [Id. at 11-12].

On September 11, 2017, the Plaintiff told Defendant Ingram that he needed all of his property and a DC-160 form. The Plaintiff also told Defendant Ingram that he was wrongly placed on modified housing, and Ingram said that Defendant Lambert should have moved him. After the Plaintiff had been in modified housing for a week or two, he alleges that Officer Kindel[2] retrieved what property she could from Lower Richmond from Defendant Mack, who said to let the Plaintiff know that some of his property had been confiscated, including legal, religious, educational, and personal property. The Plaintiff was never given a DC-160 form. [Id. at 12-13].

The Plaintiff alleges that he wrote an 8-page grievance regarding the foregoing on November 5, 2018, which he sent to Defendants Lassiter,

---

[2] Officer Kindel is not named as a Defendant and the Plaintiff does not appear to assert any claims against her. Even if the Plaintiff intended to do so, the Complaint cannot proceed against her. See Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties").

5

Richardson, and Reynolds. [Id. at 15; see also Doc. 1 at 22: Grievance No. 486-2018-KPODF-09380]. On November 27, 2018, the Plaintiff received a screening response from Defendant Williams saying that the grievance was rejected as untimely because it was submitted more than 90 days after the alleged events occurred. [Doc. 1 at 15; see also Doc. 1 at 30: Screening Response]. The Plaintiff alleges that Defendants Lassiter, Richardson, Reynolds, and Williams willfully refused to process his grievance, investigate the incidents discussed in it, and remedy the issues pursuant to NCDPS policy. [Doc. 1 at 15].

As relief, the Plaintiff seeks declaratory judgment; preliminary and permanent injunctive relief including a transfer to Central Prison; compensatory damages for his missing property and for emotional and physical pain; punitive damages; costs; a jury trial; and any other relief that the Court deems just, proper and equitable. [Id. at 19-20].

## II.  STANDARD OF REVIEW

Because the Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. §

1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

#### A. Deprivation of Property

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge

is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. See Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

The Plaintiff complains that his properly was improperly confiscated upon arriving at Lanesboro C.I. and that he was never provided a property inventory form, contrary to NCDPS policy. The Plaintiff appears to allege that his property loss resulted from random, unauthorized action rather than

8

an established state procedure. Adequate post-deprivation remedies exist for the Plaintiff's alleged property loss, so there is no legal theory which would support this claim. See, e.g., Smith v. Ledford, 2006 WL 1431666 at *2 (W.D.N.C. May 22, 2006), aff'd, 203 F. App'x 484 (4th Cir. 2006) (dismissing plaintiff's claim that jail administrator confiscated his personal property upon his departure from the jail and refused to return it, because plaintiff had an adequate post-deprivation remedy for conversion). Therefore, the Plaintiff's claim that Defendants improperly confiscated his personal property will be dismissed.

### B. Excessive Force

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain on prisoners. Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013). "An inmate's Eighth Amendment excessive force claim involves both an objective and a subjective component." Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019). "The objective component asks whether the force applied was sufficiently serious to establish a cause of action." Id. The subjective component "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 112-13.

Here, the Plaintiff alleges that Defendants Blackmon and Simmons pepper sprayed him, hit him with a baton, and then locked him in an outdoor recreation cage for the purpose of causing him pain. The Plaintiff has stated a plausible claim that Defendants Blackmon and Simmons used excessive force against him for the very purpose of causing harm. Therefore, the Plaintiff's excessive force claim against Defendants Blackmon and Simmons will be permitted to proceed.

### C. Deliberate Indifference to a Serious Medical Need

To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental

10

Case 3:20-cv-00460-MR   Document 9   Filed 02/23/21   Page 10 of 20

fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer v. Brennan, 511 U.S. 825 (1994).

In his Complaint, the Plaintiff appears to allege that Defendants Blackmon and Simmons were deliberately indifferent to a serious medical need after applying pepper spray and beating him with a baton. He alleges that these Defendants failed to provide him with a decontamination shower and/or take him to the medical department in accordance with NCDPS policy and, instead, locked him in an outdoor recreation cage to exacerbate his pain and make it difficult for him summon help. The Plaintiff alleges that he experienced the burning, blinding, and suffocating effects of pepper spray for what seemed to be an extensive time before he was able to summon aid and receive a decontamination shower and medical attention.

The Plaintiff also appears to assert a claim of deliberate indifference to a serious medical need against Defendant Mack. He alleges that he told Mack he needed the medication and mouthguard that had been confiscated upon his arrival at Lanesboro C.I., but that Mack failed to return his property.

Liberally construing these allegations, the Plaintiff has stated a plausible claim that Defendants Blackmon and Simmons were subjectively aware that their use of force caused the Plaintiff a serious medical need and that they acted with objective deliberate indifference by preventing him from

obtaining treatment. Therefore, the Plaintiff's claim of deliberate indifference to a serious medical need against Defendants Blackmon and Simmons will be permitted to proceed.

However, the Plaintiff's claim against Defendant Mack is insufficient to proceed. This claim is vague and conclusory in that the Plaintiff fails to identify the medication at issue or explain how the medication and mouthguard were needed to treat a serious medical need. Nor has the Plaintiff alleged that Defendant Mack acted with objectively deliberate indifference by failing to return that property. Therefore, the claim for deliberate indifference to a serious medical need against Defendant Mack is dismissed.

**D.     Access to Courts**

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), aff'd, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343,

356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Here, the Plaintiff appears to allege that Defendants Simmons and Blackmon denied him access to the courts by confiscating his legal materials although he had ongoing litigation. He further alleges that he told Defendant Mack he needed his legal materials for active litigation, and that Defendant Mack failed to return his legal property.

The Plaintiff has failed to allege that he suffered any actual injury as a result of the Defendants' alleged confiscation of, and failure to return, his legal property. Therefore, the Plaintiff's claim that he was denied access to the courts will be dismissed.

### E. Religious Freedom

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief and that the official action or regulation substantially burdened his exercise of

that belief. See generally Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In his Complaint, the Plaintiff alleges that the property Defendants Blackmon and Simmons confiscated included religious items such as head coverings, a pendant, oils, and books. Plaintiff further alleges that he told Defendant Mack that he needed his religious property, but that she failed to return it. The Plaintiff, however, does not allege facts sufficient to demonstrate that he has a sincerely held religious belief which the Defendants substantially burdened. Therefore, this claim will be dismissed.

### F. Housing

The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. Prisoners do not have a liberty interest in any particular housing assignment unless it imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see Incumaa v. Stirling, 791 F.3d 517, 530 (4th Cir. 2015) (considerations include "(1) the

magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether the assignment to administrative segregation had any collateral consequences on the inmate's sentence.").

The Plaintiff appears to allege that Defendant Lambert placed him in the "hole" for 72 hours after the alleged use of force incident and later failed to correct the Plaintiff's improper placement in modified housing. The Plaintiff, however, has failed to explain how 72 hours in the "hole" or placement on modified housing for a few weeks imposed an atypical or significant hardship on him. The Plaintiff has failed to state a plausible § 1983 claim with regards to his housing and, therefore, it will be dismissed.

### G.  Retaliation

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) [ ]he engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely affected [his]

First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Here, the Plaintiff alleges that Defendants Blackmon and Simmons deprived him of his property, used excessive force against him, and deliberately deprived him of medical care in retaliation for having filed prior lawsuits "against their department, facility and co-workers…." [Doc. 1 at 16-17]. Specifically, the Plaintiff alleges that, during the intake process, Defendant Simmons said that he knew of the Plaintiff, and that he was not going to put up with the same "shit" that they put up with the last time the Plaintiff was at Lanesboro C.I. [Id. at 5]. The Plaintiff also alleges that Defendant Simmons told the Plaintiff that he was aware of the Plaintiff's "numerous bullshit legal actions" immediately before the Plaintiff's property was confiscated, he was subjected to excessive force, and he was denied medical treatment. [Id. at 6].

While the causal relationship between the Plaintiff's protected activities and the Defendants' alleged conduct appears to be tenuous at best, the Court concludes that the Plaintiff has stated a plausible retaliation claim against Defendants Simmons and Blackmon sufficient to pass initial review.

**H.    Grievance Denial**

The Plaintiff alleges that Defendants Lassiter, Richardson, Reynolds, and Williams knowingly refused to process his November 5, 2018 grievance, investigate its contents, or provide a remedy. However, "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams, 40 F.3d at 75. Therefore, the denial of the grievance as untimely and these Defendants' failure to investigate the Plaintiff's allegations concerning events that had taken place more than a year earlier did not violate any constitutional right and provides no basis for a § 1983 claim. Therefore, the Plaintiff's claim with regards to his November 2018 grievance is dismissed for failure to state a claim upon which relief can be granted.

**I.    Policy Violations**

The Plaintiff alleges that various Defendants failed to follow NCDPS policy and procedures with regards to, *inter alia*: inventory of personal property; possession of legal papers; possession of religious property;

17

making housing changes; and processing and investigating inmate grievances. Prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation. Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013). The Plaintiff has failed to state a constitutional claim with regards to the alleged deprivation of his property, access to the courts, religious freedom, housing, and the denial of his grievance, as discussed *supra.* Therefore, to the extent that the Plaintiff alleges bare policy violations with regards to those issues, such claims will be dismissed for failure to state a claim upon which relief can be granted.

### J. Claims for Declaratory and Injunctive Relief

Finally, the Plaintiff seeks both declaratory and injunctive relief. A prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

All of the incidents at issue allegedly occurred at the Lanesboro C.I., which is now Anson C.I., a women's facility. The Plaintiff presently resides at Scotland C.I. Therefore, his claims for declaratory and injunctive relief are

dismissed as moot. See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's claims for the use of excessive force, deliberate indifference to a serious medical need, and retaliation against Defendants Blackmon and Simmons survive initial review under 28 U.S.C. § 1915(e)(2) as they are not clearly frivolous. The remaining claims are dismissed without prejudice. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to correct the deficiencies identified in this Order and to otherwise properly state a claim upon which relief can be granted. Any Amended Complaint will be subject to all timeliness and procedural requirement and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, Defendants Ingram, Lambert, Lassiter, Mack, Reynolds, Richardson, and Williams will be dismissed from this case without further notice to Plaintiff.

**IT IS, THEREFORE, ORDERED** that:

(1) The excessive force, deliberate indifference to a serious medical need, and retaliation claims against Defendants Blackmon and Simmons have passed initial review;

(2) The remaining claims are dismissed without prejudice for failure to state a claim upon which relief can be granted; and

(3) The Plaintiff shall have thirty (30) days in which to amend the Complaint in accordance with the terms of this Order. If Plaintiff fails to amend the Complaint in accordance with this Order and within the time limit set by the Court, Defendants Ingram, Lambert, Lassiter, Mack, Reynolds, Richardson, and Williams will be dismissed from this case without further notice to Plaintiff.

The Clerk is respectfully instructed to mail Plaintiff a blank prisoner § 1983 complaint form.

**IT IS SO ORDERED**.

Signed: February 22, 2021

Martin Reidinger
Chief United States District Judge