# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL CASE NO. 3:20-cv-00460-MR

| | | |
|---|---|---|
| ADRIAN DOMINIC WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| DARRELL BLACKMON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendants Darrel Blackmon and Brett Simmons' Motion for Summary Judgment [Doc. 33].

## I.     BACKGROUND

The incarcerated Plaintiff Adrian Dominic Watkins, proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Lanesboro Correctional Institution.[1] The Plaintiff's unverified Complaint[2] passed initial review against Defendants Blackmon

_____

[1] The Plaintiff is presently incarcerated at the Scotland Correctional Institution.

[2] The Complaint is not signed under penalty of perjury. 28 U.S.C.A. § 1746. It contains a notary's Certificate of Acknowledgment which indicates only that the Plaintiff signed the Complaint. Such certification is not the equivalent of a verification or affidavit, as it is not a certification that the Plaintiff swore to the truth of the Complaint's contents. See generally N.C. Gen. Stat. § 10B-41 (describing notarial certificate of acknowledgement); Pratt v. Allbritton, No. 4:16-cv-00198-BR, 2018 WL 4610151, at *7 (E.D.N.C. Aug. 8,

and Simmons on claims of excessive force, deliberate indifference to a serious medical need, and retaliation. [Doc. 1: Complaint; Doc. 9: Order on Initial Review of the Complaint]. The Plaintiff seeks a declaratory judgment, injunctive relief, compensatory and punitive damages, costs, a jury trial, and any other relief that the Court deems just, proper and equitable. [Id. at 19-20].

Defendants Blackmon and Simmons filed the instant Motion for Summary Judgment. [Doc. 33]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 37: Roseboro Order]. The Plaintiff has not filed a Response and the time to do so has expired.[3] Having been fully briefed, this matter is ripe for disposition.

---

2018), report and recommendation adopted, No. 4:16-cv-198-BR, 2018 WL 4604522 (E.D.N.C. Sept. 21, 2018), aff'd sub nom. Pratt v. Albriton, 764 F. App'x 343 (4th Cir. 2019).

[3] As discussed in Note 2 supra, the Complaint is not verified and, therefore, it will not be considered in opposition to the Defendants' Motion for Summary Judgment. See generally Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ("a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge"). However, a Grievance that is attached to the Complaint was signed "under penalty of perjury," and was "sworn and subscribed" before a notary. [Doc. 1 at 22-29: Verified Grievance]. Accordingly, the Grievance will be considered as an affidavit in opposition to the Defendants' Motion for Summary Judgment. See Williams 952 F.2d at 823.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. <u>Id.</u>

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. <u>Id.</u> at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

3

"depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  To that end, only evidence admissible at trial may be considered by the Court on summary judgment.  Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).  As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts ….  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

4

no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

## III.   FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

The Plaintiff was transferred to Lanesboro CI on August 25, 2017. [Doc. 35-1: Simmons Decl. at ¶ 5; Doc. 35-5: Blackmon Decl. at ¶ 6; Doc. 1: Verified Grievance at 23]. Officer Blackmon was stationed at the intake counter in Lanesboro CI's receiving area. [Doc. 35-5: Blackmon Decl. at ¶ 5]. At around 2:35 p.m., Officer Blackmon told the Plaintiff that his personal property exceeded the institution's three-bag limit and that he would have to mail some of the property home or allow it to be destroyed. [Doc. 35-5: Blackmon Decl. at ¶¶ 7-8; Doc. 35-1: Simmons Decl. at ¶¶ 6-7; Doc. 1: Verified Grievance at 23]. The Plaintiff became upset. [Doc. 35-5: Blackmon Decl. at ¶ 10; Doc. 35-1: Simmons Decl. at ¶ 10].

5

According to the Defendants, Sergeant Simmons[4] then confirmed that the Plaintiff had too much property to bring into the facility and told the Plaintiff that, if he kept being defiant, he would have to submit to restraints. [Doc. 35-1: Simmons Decl. at ¶¶ 10-11; Doc. 35-5: Blackmon Decl. at ¶¶ 10-11]. The Plaintiff continued to be defiant and refused to submit to restraints. [Doc. 35-5: Blackmon Decl. at ¶ 11; Doc. 35-1: Simmons Decl. at ¶¶ 12]. Sergeant Simmons removed his handcuffs from his belt with his left hand, grasped his pepper spray in his right hand in a way that the Plaintiff could clearly see it, and again instructed the Plaintiff to submit to restraints. [Doc. 35-1: Simmons Decl. at ¶¶ 12, 13; Doc. 35-5: Blackmon Decl. at ¶ 13]. The Plaintiff turned from the counter to face Simmons, continued to refuse to submit to restraints, became more argumentative and louder, and stated "Y'all not gonna handle me." [Doc. 35-1: Simmons Decl. at ¶¶ 14-15; Doc. 35-5: Blackmon Decl. at ¶¶ 14-15]. Officer Blackmon "felt that Plaintiff might become violent," so he started to come out from behind the intake counter. [Doc. 35-5: Blackmon Decl. at ¶ 16]. At that moment, Sergeant Simmons deployed a one-half second burst of pepper spray to the Plaintiff's face pursuant to policy, to gain the Plaintiff's compliance. [Doc. 35-1: Simmons Decl. at ¶¶ 16-17; Doc. 35-5: Blackmon Decl. at ¶ 17]. The Plaintiff

---

[4] Defendant Simmons is now a lieutenant. [Doc. 35-1: Simmons Decl. at ¶ 2].

6

momentarily raised his fists in front of him as though he was going to fight, but then grabbed the top of his shirt to wipe his face. [Doc. 35-1: Simmons Decl. at ¶ 20; Doc. 35-5: Blackmon Decl. at ¶ 18].

According to the Plaintiff, Sergeant Simmons told him to put his hands behind his back and, when the Plaintiff asked why, Simmons pepper sprayed him. [Doc. 1: Verified Grievance at 24].

Another officer then placed the Plaintiff on the floor while he continued to resist efforts to place him in restraints. [Doc. 35-1: Simmons Decl. at ¶ 20; Doc. 35-5: Blackmon Decl. at ¶ 19].

According to the Defendants, the Plaintiff continued to violently struggle while he was on the floor. [Doc. 35-5: Blackmon Decl. at ¶ 20; Doc. 35-1: Simmons Decl. at ¶ 21]. As a result of the continued struggling and defiance, and in order to gain Plaintiff's compliance, Sergeant Simmons delivered four baton strikes to Plaintiff's upper left thigh, and another officer administered two half-second bursts of pepper spray. [Doc. 35-1: Simmons Decl. at ¶ 21]. Simmons' use of the baton was authorized by policy because baton strikes are authorized to control violent or aggressive offenders. [Id. at ¶ 22]. It eventually required five or six officers to hold the Plaintiff still so that he could be handcuffed because of his "violent struggling." [Id. at ¶ 23]. According to Sergeant Simmons, his use of pepper spray and a baton during

the incident "was meant solely to regain control of the situation and was not meant to injure or otherwise harm Plaintiff," was necessitated by the Plaintiff's failure to obey orders to submit to restraints and his continued violent struggling while on the floor, and was done "in a good faith effort to restore discipline and order" rather than with the intention to be cruel or evil. [Id. at ¶¶ 29-30].   Sergeant Simmons did not use any force on the Plaintiff after he was successfully placed in wrist restraints.  [Id. at ¶ 28].  Officer Blackmon was at the location where the Plaintiff was on the floor; however, he did not use any force on the Plaintiff and was not one of the officers who was attempting to hold him still while he was restrained.  [Doc. 35-5: Blackmon Decl. at ¶  22; Doc. 35-1: Simmons Decl. at ¶ 24].

The Plaintiff claims that he "wasn't violent nor aggressive" when he was on the ground, and there was "no reason" for staff to hit him with a baton. [Doc. 1: Verified Grievance at 25].

According to the Defendants, after the Plaintiff was handcuffed he was escorted to restrictive housing by officers for decontamination, accompanied by Sergeant Simmons, while Officer Blackmon remained at his post in the receiving area. [Doc. 35-5: Blackmon Decl. at ¶ 23; Doc. 35-1: Simmons Decl. at ¶ 25].  The Plaintiff was placed in the decontamination shower, given a change of clothing, and was observed for approximately one hour by the

8

unit manager. [Doc. 35-1: Simmons Decl. at ¶ 26]. The Plaintiff was then taken to the medical unit and was assessed by a nurse. [Doc. 35-1: Simmons Decl. at ¶ 27]. A clinical encounter note indicates that a nurse saw the Plaintiff at the restrictive housing unit at around 3:40 p.m. on August 25, 2017 for a use of force evaluation, after the Plaintiff was "pepper sprayed in eyes and hit in right arm, and left leg." [Doc. 35-3: MSJ Ex at 1]. The Plaintiff's eyes were pink and the nurse "encouraged [him] … to wash his eyes out with water…." [Id.].

According to the Plaintiff, Sergeant Simmons and other staff took him from the receiving area to an outside recreation cage with full restraints on; did not give him clean clothing, medical attention, or the opportunity to decontaminate; and he was left in the sun for an "extended period of time…." [Doc. 1: Verified Grievance at 24-26]. He was finally taken for a decontamination shower and was seen by medical after unit staff noticed him in the recreation cage. [Id. at 26-27]. He was taken back to medical on August 27, 2017 for photographs of the "leg injuries (sustained from the extended/rigid baton) and to give [him] treatment for the pain and bruising." [Id. at 27].

Sergeant Simmons and Officer Blackmon did not limit the Plaintiff's personal property, and Sergeant Simmons did not use force against him, in

retaliation for the Plaintiff's prior lawsuits against NCDPS or its employees or agents. [Doc. 35-1: Simmons Decl. at ¶ 31, 32; Doc. 35-5: Blackmon Decl. at ¶ 24]. Sergeant Simmons and Officer Blackmon were unaware of any previous lawsuits filed by the Plaintiff against NCDPS or its employees or agents at the time of the incident. [Doc. 35-1: Simmons Decl. at ¶ 33; Doc. 35-5: Blackmon Decl. at ¶ 25].

The Defendants have submitted a video file [Doc. 39: Video Exhibit] containing the footage from the Lanesboro CI receiving area that shows the following events:[5]

| | |
|---|---|
| 2:32:41 | Plaintiff standing at the intake counter, speaking to Blackmon, who is behind the counter, and Simmons who is standing several paces to the side of Plaintiff |
| 2:33:36 | Plaintiff continues speaking; Simmons grasps the handcuffs on his belt with his left hand and steps toward Plaintiff |
| 2:33:37 | Simmons' right hand moves to his belt and he continues to approach Plaintiff |

---

[5] The view of the incidents on the ground are partially blocked by a wall and the responding officers. For instance, the baton strikes are not visible on the video.

2:33:38    Simmons removes the pepper spray from his belt with his
           right hand; Plaintiff continues facing Simmons, talking;
           Blackmon begins to move from behind the intake counter

2:33:39    Simmons sprays Plaintiff's face; Plaintiff raises his hands,
           takes several steps away, and wipes his face on his shirt

2:33:49    Another officer takes the Plaintiff to the ground

2:33:52    The officer struggles on the ground with the Plaintiff;
           additional officers respond

2:34:02    Plaintiff continues to struggle

2:35:04    Plaintiff is lifted from the floor in handcuffs

2:35:17    Plaintiff is escorted out of the receiving area by two officers,
           with Simmons following

## IV.  DISCUSSION

### A.  Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual
punishments," U.S. Const. Amend. VIII, and protects prisoners from the
"unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312,
319 (1986).  To establish an Eighth Amendment claim, an inmate must
satisfy both an objective component–that the harm inflicted was sufficiently
serious–and a subjective component–that the prison official acted with a

sufficiently culpable state of mind.  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).   In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Whitley, 475 U.S. at 320-21.

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'"  Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)).  "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'"  Id. (quoting Brooks, 924 F.3d at 112).

The Plaintiff alleges that Defendant Simmons pepper sprayed him without justification [Doc. 1: Complaint at 6-7]; that Defendant Blackmon grabbed him from behind and threw him on the floor [id. at 7]; and that both Defendants pepper sprayed him again and beat him with a baton [id.].

The Plaintiff's claim that Defendant Blackmon used excessive force against him is not supported by any forecast of evidence. Defendant Blackmon states in his Declaration that he "never used any force on Plaintiff" during the incident. [Doc. 35-5: Blackmon Decl. at ¶ 22]; and this is conclusively shown by the video of the incident. [Doc. 39: Video Exhibit]. The Plaintiff has not forecast any evidence that Defendant Blackmon pepper sprayed him, took him to the floor, or used a baton. Accordingly, summary judgment will be granted in favor of Defendant Blackmon on the excessive force claims.

As to Defendant Simmons, the forecast of evidence demonstrates that Simpson deployed one short burst of pepper spray after the Plaintiff became increasingly argumentative and repeatedly refused to submit to restraints. [Doc. 35-1: Simmons Decl. at ¶¶ 12-15; Doc. 35-5: Blackmon Decl. at ¶ 13-15]. The Plaintiff's own forecast of evidence has not created a genuine dispute of material fact in this regard. He admits that Simmons told him to put his hands behind his back and pepper sprayed him when the Plaintiff asked why. [Doc. 1: Verified Grievance at 24]. The Plaintiff has not forecast any evidence that Defendant Simmons sprayed him again, though the Defendants' forecast of evidence shows that another officer who is not a defendant did so. [Doc. 35-1: Simmons Decl. at ¶ 21]. Further, the Plaintiff

13

has not attempted to rebut Defendant Simmons' Declaration that he used pepper spray solely to regain control of the situation, and not to injure or harm the Plaintiff or to be cruel or evil. [Doc. 35-1: Simmons Decl. at ¶ 29-30]; see Williams, 77 F.3d at 763 (pepper spray can be used to "control a recalcitrant inmate").

Further, the Plaintiff has not forecast any evidence that Defendant Simmons took him to the ground. To the contrary, the video and the Defendants' Declarations demonstrate that a non-defendant officer did so. [Doc. 39: Video Exhibit; Doc. 35-1: Simmons Decl. at ¶ 20; Doc. 35-5: Blackmon Decl. at ¶ 19].

As to the baton use, the Defendants have forecast evidence that the Plaintiff continued to resist efforts to restrain him while he was on the ground, and that Defendant Simmons struck him four times with a baton to gain his compliance. [Doc. 35-1: Simmons Decl. at ¶¶ 21-22]. By contrast, the Plaintiff has forecast evidence that he "wasn't violent nor aggressive and was already on the ground. There was no reason for staff to hit [him] with their baton." [Doc. 1: Verified Grievance at 25]. The Court is not required to accept the Plaintiff's version of these events, however, because the objective video evidence indicates that the Plaintiff did continue to struggle while he was on the ground, and that it required five or six officers to restrain him.

[See Doc. 39: Video Exhibit]; Scott, 550 U.S. at 380. Moreover, the Defendants have forecast evidence, which the Plaintiff has failed to rebut, that Simmons used the baton in a good faith effort to restore discipline and order, he did not intend to injure or otherwise harm the Plaintiff, and he did not use the baton with the intention of being cruel or evil. [Doc. 35-1: Simmons Decl. at ¶ 30]; see, e.g., Adkins v. McDonald, No. 5:14-CT-3169-F, 2016 WL 7655775, at *4 (E.D.N.C. Feb. 23, 2016), aff'd, 667 F. App'x 395 (4th Cir. 2016) (baton strike justified where plaintiff disobeyed orders, insulted guards, and grabbed correctional officer's wrist). The Plaintiff's mere belief that the use of a baton was not justified is insufficient to demonstrate the existence of a genuine dispute of material fact in this regard.

Accordingly, the Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact with regard to his excessive force claims, and the Defendants' Motion for Summary Judgment will be granted.

### B.   Deliberate Indifference to a Serious Medical Need

The Eighth Amendment encompasses a right to medical care for serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States

<u>Bureau of Prisons</u>, 849 F.3d 202, 210 (4th Cir. 2017) (citing <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008)).  A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  <u>Iko</u>, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness."  <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* <u>Farmer v. Brennan</u>, 511 U.S. 825, 825 (1994).  However, mere negligence or malpractice does not violate the Eighth Amendment. <u>Miltier</u>, 896 F.2d at 852.

"Mere delay is … not enough" to support a deliberate indifference claim.  <u>Moskos v. Hardee</u>, 24 F.4th 289, 298 (4th Cir. 2022).  The objective prong requires a plaintiff to show that the alleged delay put him at a "substantial risk" of "serious harm."  <u>Id.</u> (quoting <u>Moss v. Harwood</u>, 19 F.4th 614, 625 (4th Cir. 2021); <u>Scinto</u>, 841 F.3d at 225).  "A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent the unusual circumstances where the delay itself places the prisoner at 'substantial risk

of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." <u>Moskos</u>, 24 F.4th at 298.

Here, the Plaintiff alleges that the Defendants did not immediately offer him a decontamination shower or the chance to see medical [Doc. 1: Complaint at 7]; that the Defendants placed the Plaintiff in full restraints and left him in an outside recreation cage to intensify the burning and suffocating effect of the pepper spray, and did not notify unit staff that that the Plaintiff was there in order to delay help and make him suffer [<u>id.</u> at 8-9]; that the Plaintiff was left in the recreation cage for "what seemed like an extensive period of time" [<u>id.</u> at 10]; and that he was finally decontaminated and given medical attention only after gaining the attention of unit staff [<u>id.</u>].

The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact that the Defendants were deliberately indifferent to a serious medical need. As a preliminary matter, the Defendants have forecast evidence, which the Plaintiff has failed to rebut, that Defendant Blackmon remained at his post in the receiving area while Defendant Simmons accompanied the Plaintiff and two escort officers out of the receiving area. [Doc. 35-5: Blackmon Decl. at ¶ 23; Doc. 35-1: Simmons Decl. at ¶ 25]. Accordingly, summary judgment will be granted on the deliberate

indifference claims against Defendant Blackmon because he did not participate in those events.

As to Defendant Simmons, the Plaintiff has forecast evidence that: he was left in an outdoor recreation cage for an "extended period of time" in full restraints before he was offered a change of clothes, a decontamination shower, and medical attention, which "clearly" amounted to "torture" [Doc. 1: Verified Grievance at 24-26]; and he was treated for "pain and bruising" to his leg two days later [id. at 27]. The Defendants have forecast evidence that the Plaintiff was immediately placed in the decontamination shower, was given a change of clothing, and was observed for approximately one hour by the unit manager, and then he was taken to the medical unit and was assessed by a nurse. [Doc. 35-1: Simmons Decl. at ¶¶ 26-27]. This conflict of evidence, however, does not raise a genuine issue of *material* fact. A clinical encounter note indicates that a nurse saw the Plaintiff at the restrictive housing unit just over an hour after the Plaintiff was sprayed, and the nurse encouraged the Plaintiff to wash his eyes, which were pink, with water. [Doc. 35-3: MSJ Ex at 1]. This is uncontroverted. The foregoing forecast of evidence, viewed in the light most favorable to the Plaintiff, demonstrates that he received medical attention and was able to rinse his eyes just over an hour after he was sprayed. Although the Plaintiff feels that

this was an excessive amount of time, he has failed to forecast any evidence that the delay put him at a substantial risk of serious harm. Moss, 19 F.4th at 624. Accordingly, this mere delay is insufficient to establish deliberate indifference to a serious medical need. See Moskos, 24 F.4th at 298 (plaintiff who experienced "the usual transitory effects of pepper spray for a period of, at most, 90 to 120 minutes" and who failed to testify as to any serious medical reaction or pain beyond "the normal discomfort of pepper spray" did not satisfy the objective prong).

As to the leg injury, the Plaintiff has failed to forecast any evidence that the "pain and bruising" amounted to a serious medical need, or that the two-day delay in treatment was attributable to Defendant Simmons' deliberate indifference, or was even known to him, or that the delay in receiving treatment exposed him to a substantial risk of serious harm. See Moskos, 24 F.4th at 298.

Accordingly, the Defendants' Motion for Summary Judgment will be granted on the Plaintiff's deliberate indifference claims.

## C.    Retaliation

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d

676 (4th Cir. 2000).  Prison officials may not retaliate against an inmate for exercising a constitutional right.  See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978).

In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct."  Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (citing Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)).  Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim.  Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  Id.

The Plaintiff alleges that Defendant Simmons said that he "knew of Plaintiff and that he (Lt. Simmons) was not putting up with the 'shit' that they put up last time that Plaintiff was [at Lanesboro]" [Doc. 1: Complaint at 5]; that Simmons said that he "was aware of Plaintiff's 'numerous bullshit legal actions'" and was only going to allow the Plaintiff to have three bags of legal

property despite Plaintiff's active litigation [id. at 6]; and that Defendants Blackmon and Simmons "knowingly, willfully, sadistically and maliciously ignored NCDPS policy and procedure in order to deprive Plaintiff of legal property, religious property, medical property, academic property and other personal property" and "subject[ed] Plaintiff to excessive force, pain, suffering and anguish, and … deprive[d] Plaintiff of medical treatment in retaliation to Plaintiff filing suits against their department, facility and co-workers…." [id. at 16-17].

In his forecast of evidence, the Plaintiff states that he "shouldn't have been attacked just for explaining policy and [his] rights to [his] legal property [and that] [f]orce shouldn't have been used to punish [him] for exercising [his] rights." [Doc. 1: Verified Grievance at 24]. The Defendants have forecast evidence that Blackmon and Simmons were unaware of the Plaintiff's prior lawsuits against NCDPS and its employees [Doc. 35-5: Blackmon Decl. at ¶ 25; Doc. 35-1: Simmons Decl. at ¶ 33]; that Blackmon and Simmons did not limit the amount of property the Plaintiff could bring into Lanesboro to retaliate for his prior lawsuits [Doc. 35-5: Blackmon Decl. at ¶ 24, Doc. 35-1: Simmons Decl. at ¶ 32]; and that Simmons did not use force to retaliate for his prior lawsuits [Doc. 35-1: Simmons Decl. at ¶ 31]. The Plaintiff's vague and conclusory forecast of evidence fails to demonstrate that either

21

Defendant took an adverse action against him in response to a protected activity, or that there was a causal relationship between that protected activity and the Defendants' conduct.  See Adams, 40 F.3d at 74 (bare allegations of retaliation are insufficient).  Accordingly, the Defendants' Motion for Summary Judgment is granted on the Plaintiff's retaliation claims.

### D.    Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation."  E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted).  The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."  Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not presented a forecast of evidence that the Defendants violated a constitutional right, the Defendants are also entitled to summary judgment on the grounds of qualified immunity. Therefore, the Court grants summary judgment for the Defendants on this ground as well.

## IV.    CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 33] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: October 2, 2022

Martin Reidinger
Chief United States District Judge